WALTZER, Judge.
This is an appeal from a July 30, 1992 judgment of the district court granted in accordance with a jury verdict. Judgment was granted in favor of the defendants Ted-esco Homes, Inc. and First Financial Insurance Co. and against the plaintiff Theresa Picou. Judgment on defendants’s third party demand against Florita Hyde was dismissed. The jury returned its verdict by means of interrogatories as follows:
1. Was the yard at 214 Seventh Street defective? Yes X No

If the answer is no, proceed to question 3. If the answer is yes, proceed to the next question.

3. Was Tedesco Homes, Inc. negligent in maintaining the yard at 214 Seventh Street?

If the answers to questions 1 and 3 are both no, return to the courtroom. If the answer to this question is yes, proceed to the next question.

10. What damages, if any, do you award the plaintiff as a result of the fall of Theresa Picou on August 18, 1990?
Past Medical expenses i -0-
Future Medical expenses -0-
Pain & suffering, both physical and mental -0-
Loss of earning capacity -0-
Permanent disability, if any -0-
TOTAL -0-
From that judgment, plaintiff appeals alleging the following specifications of error:
I. Whether the jury’s verdict stating that the yard at 214 Seventh Street was not defective was manifestly erroneous?
II. Whether the trial court erred by refusing to allow appellant’s challenges for cause against biased prospective jurors?
III.Whether the trial court erred by allowing evidence which tended to promote bias against appellant with respect to the issue of abortion?
TV. Whether appellant is entitled to compensation in the amount of $404,422.80?
*141 On August 16, 1990, Theresa Pieou and her husband Kenneth visited Mrs. Flori-ta Hyde at her home at 214 Seventh Street in Chalmette. Mrs. Hyde rented the house from Tedesco Homes, Inc. which owned both her house and the house next door. The Pieou vehicle had a flat. Mrs. Hyde suggested that the Picou’s borrow one of several spare tires that were stacked in her yard. She directed them into the yard, but failed to warn them about the existence of a depression in the earth variously described as a gully or a swale in her yard. Kenneth Pieou removed the tire and asked Theresa Pieou to return it to the back yard. Theresa Pieou testified that she was rolling the flat tire on her left side with her left hand when she slipped and fell into the gully. Her husband and Mark Malloy carried her into Mrs. Hyde’s house. Mrs. Hyde testified that she called Mr. Tedesco who allegedly told her to call an ambulance, which she did and Theresa Pieou was taken to de la Eonde Hospital. Theresa Pieou testified that Mrs. Hyde called the police station to ask what her rights were, that the police told her to call the landlord and that Mrs. Hyde then called Mr. Tedesco who allegedly told her to call an ambulance, which she did and Theresa Pieou was taken to de la Ronde Hospital. Mr. Tedesco testified that he was not called on the night of the accident. He testified that he first found out about the incident 3 to 4 days later when he visited the next door property to inspect fire damage caused when the next door neighbor’s grandson saturated rags, stuffed them under the door and lit them. Mr. Tedesco testified that he had owned the property for approximately 12 years, had never been informed about the existence of a swale or gully, had never received a complaint about a swale or gully and there had been no prior accidents there. Both Mr. Tedesco and Mrs. Hyde testified that under the lease, Mrs. Hyde was responsible for cutting the grass. Theresa Pieou testified at one point during trial that she thought the gully or swale was a foot and a half and that the grass was very high. At another point during trial she testified that the depth of the swale or gully came to just about her ankle, which is clearly not a foot and a half-high. All of the plaintiffs witnesses testified that the grass was a foot and a half high. Mr. Tedesco testified that the gully was 4 inches. Wilfred Gallardo, plaintiffs safety expert, testified that the gully or swale was 6 to 8 inches deep at its deepest part. According to Mr. Gallardo’s measurements, the swale or gully was 118 inches (approx. 10 feet) long by 102 inches (approx. 8.5 feet) wide. The jury found that the gully or swale was not a defect. The gully or swale had a gradual slope and the jury correctly found that the gradually sloping gully or swale was not a defect and did not constitute an unreasonable risk of harm. The jury’s finding is fully supported by the record and clearly is not manifestly erroneous. Accordingly, the first specification of error is without merit.
The second and third issues deal with the question of abortion. Theresa Pieou had one abortion before the incident complained of and one after. The records from Causeway Medical Suite, where the procedures were performed indicate that in both instances Mrs. Pieou wrote on the form that the reason for the procedure was that she could not financially afford any more children. Mrs. Pieou already had five children. Plaintiff had attempted to include the second abortion as an element of damages, thus bringing the issue into play. A review of the voir dire indicates that plaintiff challenged jurors Mr. Michel, Ms. Steilberg, Ms. Voelker, Mr. Cappo and Ms. Heaphy for cause on the abortion issue. The trial judge excused jurors Michel, Steilberg, and Voelker either for cause or on preemptory challenges. Because the jury was then completed, Mr. Cap-po and Ms. Heaphy were also excused. Accordingly, none of the jurors that plaintiff challenged on the grounds of their views on abortion were on the jury. Plaintiff argues that some of the jurors must not have been truthful about their true feelings about abortion on voir dire and that their prejudice against abortion and therefore against Mrs. Pieou caused them to find against her. This argument is without merit. Even if this court were to review this matter de novo under Rossell v. ESCO, 549 So.2d 840 (La.1989), we would find as the jury did, namely that Mrs. Pieou and her witnesses were not *142 credible and that the gully did not present an unreasonable risk of harm.
For the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.